UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHRISTOPHER HOPKINS, §
 §
    *Plaintiff*, §
 §
vs. § CIVIL ACTION NO. H-04-1884
 §
TEXAS MAST CLIMBERS, L.L.C., *et al.*, §
 §
    *Defendants*. §

## **MEMORANDUM AND ORDER**

Defendants[1] move for summary judgment (Dkt. 28) on plaintiff Christopher Hopkins's claim under the Fair Labor Standards Act (FLSA). Having considered the parties' submissions, all matters of record, legal authorities, and argument of counsel at hearing on September 15, 2005, the court determines that defendants' motion should be denied in part.[2] The court takes under advisement defendant's alternative request for summary judgment on the method of calculating of any damages.

---

[1] The named defendants are Texas Mast Climbers, L.L.C., Mast Climber Manufacturing, Inc., d/b/a American Mast Climbers, American Mast Climbers, L.L.C., William F. Mims, Jr. and AMS Staff Leasing NA, Ltd. American Mast Climbers, L.L.C. is no longer an active business entity, but there is no motion to dismiss that company as a defendant. Mims is the sole shareholder, officer, and director of the Mast Climbers companies. AMS is an unaffiliated company that performs payroll and staffing functions for Mast Climbers. AMS has joined in the motion for summary judgment. Because all defendants are aligned for purposes of the current motion, the court refers to them collectively as defendants or Mast Climbers.

[2] The parties have consented to the jurisdiction of this magistrate judge over all aspects of this case, including final judgment.

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. Mast Climbers is in the business of selling and erecting work platforms, scaffolding, mast climbing platforms, hoists, and various construction equipment. Mast Climbers maintains its equipment at a facility in the Dallas, Texas area. When contracted for a job, Mast Climbers' employees load the necessary equipment on a truck at the facility and drive it to the job site. Mast Climbers provides services at job sites in several states, including Texas, Florida, Missouri, and Louisiana.

Hopkins worked for Mast Climbers as an erector from about April 16, 2003 until June 18, 2003, and again from about September 23, 2003 until April 3, 2004. He was paid a bi-weekly salary, and was given a raise when he was rehired in September 2003, and again in February 2004. Hopkins's primary job was to erect and dismantle mobile scaffolding units for construction projects in Texas and Louisiana. Hopkins was picked up and driven to the job site by his supervisor, Dennis Dann. Hopkins contends that the pick-up truck was already loaded with any necessary tools or equipment when Dann picked him up. Hopkins did not have a valid drivers license during the time he was employed by Mast Climbers, but he nonetheless drove on occasion if Dann was too tired. Hopkins assisted with unloading the equipment at the job site. During his second period of employment Hopkins sometimes assisted with

2

loading the truck for the return trip to Dallas after a job was completed, but Hopkins denies ever doing so during his first period of employment. The parties disute wehther re-loading the truck was a regular part of Hopkins's job duties. Hopkins contends that when he did load a truck, he had no discretion in placing equipment but was told exactly where to put each piece by the truck driver, Dustin Bushnell.

Mast Climbers seeks a ruling that Hopkins is exempt from the overtime provisions of the FLSA because as a loader he is an employee within the authority of the Secretary of Transportation. 29 U.S.C. § 213(b). Hopkins asserts that loading was at most a *de minimis* aspect of his job. In the alternative, Mast Climbers seeks a ruling that the fluctuating workweek method of calculating overtime applies to Hopkins.[3]

## II. LEGAL STANDARDS

### A. Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*,

---

[3] The fluctuating workweek is a method of calculating overtime for employees who clearly understand that they are being paid a salary for work hours that fluctuate from week to week. *See* 29 C.F.R. 778.114.

274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)). If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

In a non-jury trial, the judge is the ultimate trier of fact. In such cases, the court may grant summary judgment where a trial would not enhance the court's ability to draw inferences and conclusions. *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978); *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir.

1991). The district court must be aware that assessments of credibility, however, come into sharper focus upon hearing live witnesses. *Placid Oil*, 932 F.2d at 398.

## B. Fair Labor Standards Act Exemption

The FLSA provides that employers must pay covered employees extra compensation of at least one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The reach of the FLSA is broad, but not unlimited. *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). Certain employees are exempt from FLSA coverage. The employer bears the burden to prove that an employee is exempt, and "exemptions are to be narrowly construed against the employer." *Id.*

At issue in this case is the exemption for any employee whom the Secretary of Transportation (Secretary) has the "power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). It does not matter if the Secretary has actually established qualifications and maximum hours of service, but only whether the Secretary has the power to do so. 29 C.F.R. § 782.1; *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47-48 (1943).

The Secretary's authority to prescribe qualifications and maximum hours extends only to employees of motor carriers that transport passengers or property in interstate commerce whose activities affect the safety of operation of vehicles on the

5

highways of the country. 49 U.S.C. § 13501; *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 671 (1947).

The Department of Transportation has found that the activities of "loaders" directly affect the safety of operation of motor vehicles in interstate commerce. *Levinson*, 330 U.S. at 669. "Loaders" are employees whose "sole duties are to load and unload motor vehicles and transfer freight between motor vehicles and between vehicles and the warehouse." *Id.* at 652 n.2 (citing an Interstate Commerce Commission ruling). Thus, in *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 706 (1947), the Supreme Court held that loaders are exempt from the FLSA and remanded the case to the district court to determine "whether the activities of the respective respondents consisted, either wholly or in substantial part, of the class of work which is defined by the Interstate Commerce Commission in Ex Parte No. MC-2, 28 M.C.C. 125, 133-34, as that of a 'loader,' and as affecting the safety of operation of motor vehicles in interstate or foreign commerce."

The *Pyramid* Court provided guidance to the district court to assist its determination of whether the activities of the employees were loaders, stating:

> [T]he District Court shall not be concluded by the name which may have been given to [an employee's] position or to the work that he does, nor shall the District Court be required to find that any specific part of his time in any given week must have been spent in those activities. The District Court shall give particular attention to whether or not the

> activities of the respective respondents included that kind of 'loading' which is held by the Commission to affect safety of operation. In contrast to the loading activities in the Levinson case, the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which is described by the Commission and which, in its opinion, affects safety of operation.

*Id.* at 707-08 (citation omitted). The Fifth Circuit has characterized *Pyramid* as establishing a *de minimis* rule. An employee is subject to the overtime provisions of the FLSA if his work affecting highway safety is only "trivial, casual, occasional and insubstantial." *Wirtz v. Tyler Pipe and Foundry Co.*, 369 F.2d 927, 930 (5th Cir. 1966); *Mitchell v. Meco Steel Supply Co.*, 183 F. Supp. 777, 779 (S.D. Tex. 1956) (while employee's duties from time to time included assisting with the loading and unloading of trucks, his connection with such activities was so casual and inconsequential as not to bring him within the exception to the FLSA).

As a further qualification to the exemption for "loaders," federal regulations provide that:

> [A]n employee who has no responsibility for the proper loading of a motor vehicle is not within the exemption as a 'loader' merely because he furnishes physical assistance when necessary in loading heavy pieces of freight, or because he deposits pieces of freight in the vehicle for someone else to distribute and secure in place, or even because he does the physical work of arranging pieces of freight in the vehicle where

7

> another employee tells him exactly what to do in each instance and he is given no share in the exercise of discretion as to the manner in which the loading is done.

29 C.F.R. § 782.5(c) (citing *Pyramid* and *Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186 (5th Cir. 1953)).

### III. ANALYSIS

The Secretary of Transportation, through the Interstate Commerce Commission, has ruled that loading equipment on a truck is an activity that affects highway safety. The issue in this case is whether Hopkins performed loading activities which require exempting him from the overtime provisions of the FLSA. Defendant Mast Climbers bears the burden of proof on this issue. *Cleveland*, 388 F.3d at 526.

Hopkins testifies by affidavit that he never loaded trucks at the Dallas facility where the scaffolding was kept and never loaded miscellaneous equipment into the bed of the pick-up truck in which his supervisor, Dennis Dann, picked him up and took him to the work sites.[4] He further testifies that during the first two months of his employment he never loaded the scaffolding and elevator equipment back onto a truck at the conclusion of a job.[5] During his second period of employment, Hopkins

---

[4] Affidavit of Christopher Hopkins (Hopkins Aff.) (Dkt. 31), ¶¶11-13.

[5] *Id.* ¶ 20.

8

concedes he did load the truck occasionally, but only if no one else was available, and doing so was not part of his normal job responsibilities.[6] When he did load, the driver of the truck, Dustin Bushnell, told Hopkins exactly where to place each piece of equipment.[7] During the entire period of his employment, Hopkins did not have a Texas drivers license. Therefore, he drove Dann's pick-up truck only a couple of times when Dann was too tired to drive.[8]

Mast Climbers' own evidence is consistent in several ways with Hopkins' account. Mims, the owner of Mast Climbers, testified that Hopkins was an erector and that his main responsibility was for erecting and dismantling scaffolding towers.[9] Mast Climbers also has submitted Hopkins's deposition, in which he testified that he loaded the truck at the end of a job "sometimes."[10] There are no contemporaneous

---

[6] *Id.* ¶ 21.

[7] *Id.* ¶ 23.

[8] *Id.* ¶ 26.

[9] Oral Deposition of William F. Mims, Jr., Exhibit 1 to Defendant's Motion for Summary Judgment (Mims Depo.), at 20.

[10] Oral Deposition of Christopher Lane Hopkins, Exhibit 2 to Defendant's Motion for Summary Judgment (Hopkins Depo.), at 47.

9

records or other co-worker accounts[11] describing Hopkins's work.[12]  The most detailed description of Hopkins's job is in Dann's affidavit:

> Hopkins's job duties included erecting and dismantling the scaffolding masts and elevator units the Company rented out to its customers. Hopkins' job duties also included unloading the trucks that transported the scaffolding masts and elevator units to the job sites and reloading these trucks at the job site once the project was finished.[13]

Dann also testifies that Hopkins loaded company-owned tools into the bed of the pick-up in which they rode to job sites.[14]  Dann does not assert that Hopkins ever loaded trucks at the Dallas facility for transportation to job sites.  Dann does not say whether the loading activities he described were a substantial part of Hopkins's job, but he does say that he performed loading tasks for "several" job sites outside the

---

[11]  As Mims testified, Dann and Hopkins usually worked as a two-man team, making them the only witnesses with first-hand knowledge.  Mims Depo., at 89-90.

[12]  Hopkins has presented a "breakdown based on spreadsheets to the best of my ability" produced by Mast Climbers.  Exhibit 1 to Affidavit of Daniel W. Jackson (Dkt. 32).  The chart apparently attempts to recreate Hopkins's hours worked and job activities for 2003 and 2004.  The court does not rely on the document because the circumstances behind its creation are unclear and it does not bear the indicia of trustworthiness.  Nonetheless, the court notes that very few entries include a description of "loading" activities.  Mast Climbers has presented a report of an investigation by the Department of Labor purportedly ruling that Mast Climbers' erectors are exempt from the FLSA.  Exhibit 4 to Defendant's Motion for Summary Judgment.  The court does not rely on the report because nothing indicates that the DOL's investigation involved Hopkins.

[13]  Affidavit of Dennis Eugene Dann, Exhibit 3 to Defendant's Motion for Summary Judgment, ¶ 4.

[14]  Id. ¶ 7.

state of Texas.[15] Dann's affidavit does not dispute Hopkins's assertion that Bushnell directed him where to place equipment when loading at the job site. Dann further testifies that Hopkins drove the pick-up "occasionally," when Dann was too tired to drive.[16]

Based on the existing record, Mast Climbers has not proven as a matter of law that Hopkins is an exempt employee. The determination of whether an employee is exempt under the FLSA is primarily a question of fact. *Blackmon*, 835 F.2d at 1137. Dann and Hopkins disagree as to whether Hopkins ever loaded the pick-up truck that they drove to job sites, and whether reloading the truck at the completion of a job was a substantial part of Hopkins's job duties. There is also fact question as to whether Hopkins exercised any discretion on the occasions that he did load the truck at the job site. If it is true that Bushnell closely directed Hopkins activities and Hopkins did nothing more than provide physical labor, he is not the kind of loader whose activities affect highway safety, and is not exempt. *See* 29 C.F.R. § 782.5. At the very least, Hopkins has created a fact issue as to whether or not any loading or driving activities he performed were only *de minimis* under the standard established in *Pyramid*.[17]

---

[15]   *Id.* ¶ 8.

[16]   *Id.* ¶ 6.

[17]   Although this court will be the trier of fact, the court will withhold ruling on the applicability
(continued...)

11

## IV. **CONCLUSION AND ORDER**

For the reasons set forth above, it is

ORDERED that Mast Climbers' motion is denied to the extent it seeks summary judgment that Hopkins was exempt from coverage of the FLSA. It is further

ORDERED that Mast Climbers' motion is taken under advisement to the extent it seeks a summary judgment ruling that overtime is to be calculated on the basis of a fluctuating workweek pursuant to 29 C.F.R. § 778.114.

Signed at Houston, Texas on September 19, 2005.

Stephen Wm Smith
United States Magistrate Judge

---

[17] (...continued)
of the exemption until after hearing live testimony at trial because the credibility of Dann and Hopkins is at issue.